UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**FRANKLIN R. GREEN, JR.,**

    **Plaintiff,**

v.                                                      Civil Action No. 2:05cv634

**VIRGINIA WESLEYAN COLLEGE,**

    **Defendant.**

## ORDER AND OPINION

This matter comes before the court on the defendant's motion for summary judgment. After examination of the briefs and record, this court determines oral argument is unnecessary because the facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. By letter dated August 25, 2006, the parties did not request oral argument. The court, for the reasons set out fully herein, **GRANTS** the defendant's motion for summary judgment.

I. Procedural History

On October 26, 2005, the plaintiff, Franklin R. Green, Jr., filed a complaint with this court, alleging that the defendant, Virginia Wesleyan College, subjected him to discrimination based upon his race and later retaliated against him for complaining of this discrimination, in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. The plaintiff avers in his complaint that he was employed by the defendant as a security officer

1

and was wrongfully disciplined and then threatened with demotion or dismissal when he complained. The plaintiff alleges that he was harassed by his supervisors and had his schedule changed, which forced him to request a reassignment in rank.

On March 9, 2006, the defendant filed an answer, in which it denied the material allegations of the complaint and asserted certain affirmative defenses. On August 4, 2006, the defendant filed a Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. In an accompanying brief, the defendant asserts that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. On August 17, 2006, the plaintiff filed a response to the defendant's motion. On August 24, 2006, the defendant filed a reply brief.

## II. Factual History

The plaintiff, a black male, alleges that after he was promoted to a supervisory role by the defendant's white security director, Leo Therrien, five white members of the security department harassed him because of his race, including the security director and his second-in-command as well as three of the plaintiff's subordinates. The plaintiff avers that he was forced to formally discipline three security officers for insubordination but that his supervisors did nothing to follow up on this discipline. In the first instance, the plaintiff alleges that a white subordinate, Thomas Hoster, refused to fulfill a direct order. Although he admits he cannot identify any racial remarks from Hoster at the time of the incident, the plaintiff nevertheless urges that the incident was "racial" because he is black and Hoster is white. In the second instance, the plaintiff was accused of assaulting Treavor Zilar, another white subordinate, in the course of attempting to discipline

Zilar for being outside of his patrol area. Again, the plaintiff insists that the incident was "racial" because Zilar is white and the plaintiff is black, and cannot identify any other justified reason for the accusation of assault besides the plaintiff's race.

In the third case, the plaintiff corrected another white subordinate, Bruce Carlton, for wearing a non-regulation hat. Carlton objected, and the plaintiff disciplined him for insubordination. In similar fashion, the plaintiff cannot identify any racial language used by Carlton, but attributes the "racial" nature of the incident to the races of the respective parties involved. The plaintiff later disciplined Carlton for falsely advising him that he had checked the security of a location that he had actually not checked. Again, the plaintiff acknowledges that the only identifiable racial component in the incident was his perception that Carlton did not like being told how to do his job by the plaintiff because the plaintiff is black and Carlton is white.

The plaintiff also alleges that Ed Gregory and Emanuel White, two of his supervisors, counseled him for the unprofessional behavior of spreading unfounded rumors. The plaintiff alleges that because he had disciplined Hoster, Zilar, and Carlton, all of whom he perceived to be "favorites" of Gregory, that Gregory falsely accused him of this charge. The plaintiff admits, however, that Gregory did not use any racial language in their interaction, and that White, a black supervisor, was present at the time. The plaintiff alleges further that he was later given a counseling letter by Therrien with regard to the spreading of rumors. Despite the absence of any racial language during this encounter, the plaintiff argues that the discipline constituted racial discrimination because Therrien slammed his hand on the table and told the plaintiff to sign a form to acknowledge the discipline or "hit the door."

The plaintiff further alleges that when he brought the incidents of alleged racism to the

attention of the counseling director at Virginia Wesleyan College, he was subjected to retaliatory treatment by other security officers, including an incident in which he claims that White, his black supervisor, went to a building that the plaintiff had previously secured and unlocked several doors. The plaintiff also claims that his complaints to the College resulted in his off-days being changed from the weekend to two days in the middle of the week, which was less desirable to him. However both the plaintiff's schedules for the dates in question and his timecards indicate that his days off did not change until he was transferred to another shift. The transfer came at the request of the plaintiff, who cited his poor health as the reason, and at the same time asked for a change in rank. The plaintiff noted that the night shift is easier, and acknowledges that his request for a change in shift and rank was entirely voluntary.

    The plaintiff also complains of being reassigned to "P-3" foot patrol, which involves driving to different dormitories on the campus of Virginia Wesleyan College and patrolling each dorm on foot. Lastly, the plaintiff notes that he was reassigned to a different shift in which he would report directly to Carlton, an officer whom the plaintiff had previously disciplined for insubordination. The plaintiff urges that these actions constitute retaliation for the complaints he made to the College's administration regarding the racial bias he perceived in the security department.

### III.  Standard of Review

    Summary judgment under Federal Rule of Civil Procedure 56 is only appropriate when the court, viewing the record as a whole and in the light most favorable to the non-moving party, determines that there exist no genuine issues of material fact and that the moving party is entitled

to judgment as a matter of law. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). In Title VII cases, the Fourth Circuit, although cautioning against overuse, has determined that summary judgment may be entered if there are no genuine issues of material fact. See Ballinger v. North Carolina Agric. Extension Ser., 815 F.2d 1001, 1005 (4th Cir. 1987).

Once a party has properly filed evidence supporting the motion for summary judgment, the non-moving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. Celotex Corp., 477 U.S. at 322-24. Such facts must be presented in the form of exhibits and sworn affidavits. Failure by the plaintiff to rebut defendant's motion with such evidence will result in summary judgment. "[T]he plain language of Rule 56 mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. Although the moving party bears the initial burden of stating the basis for its motion, that burden can be discharged if the moving party can show "an absence of evidence to support the non-moving party's case." Id. at 323, 325. After the moving party has discharged the burden, the non-moving party must then designate specific facts showing that there is a genuine issue of material fact. Id. at 324.

To enter summary judgment, a court does not need to determine that there are no factual issues in dispute. To find against the moving party, however, the court must find both that the facts in dispute are material and that the disputed issues are genuine. A factual dispute is deemed to be material if it is dispositive of the claim. See Thompson Everett, Inc. v. National Cable

Advertising, L.P., 57 F.3d 1317, 1323 (4th Cir. 1995). Similarly, a factual dispute is considered genuine if it is based on more than speculation or inference. Celotex Corp., 477 U.S. at 327; Runnebaum v. NationsBank of Md., N.A., 123 F.3d 156, 164 (4th Cir. 1997) (en banc), overruled on other grounds by Bragdon v. Abbott, 524 U.S. 624 (1998).

While it is the movant's burden to show the absence of a genuine issue of material fact, Pulliam Investment Co., Inc. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987), it is the non-movant's burden to establish the existence of such an issue. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-587 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. To survive summary judgment, the non-moving party must present evidence that is "significantly probative." Celotex Corp., 477 U.S. at 327.

The plaintiff responded to the defendant's motion for summary judgment by, in part, noting that he was "elect[ing] not to pursue the discrimination allegations in this action." The defendant has urged this court to consider this election a voluntary dismissal of the plaintiff's claims of discrimination, with prejudice, under FED. R. CIV. P. 41(a). However, by failing to respond to one aspect of the defendant's motion for summary judgment, the plaintiff has brought himself within the purview of Federal Rule of Civil Procedure 56(e), which states "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." The facts as presented in defendant's motion for summary judgment remain uncontradicted as to the plaintiff's charge of discrimination, and therefore must be taken as the

factual basis for this court's decision.  See Loc. R. 56(b).

IV.  Analysis

A.  Discrimination

      The plaintiff's claims of racial discrimination in his employment come under Title VII, which prohibits employers from failing or refusing to hire or discharging any individual, or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1).  Employers are also forbidden to "limit, segregate, or classify [their] employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(2).

      A plaintiff may establish a claim of discrimination or retaliation in one of two ways.  First, the plaintiff may present direct or indirect evidence of the discriminatory animus alleged.  Hill v. Lockheed Martin Logistics Management, Inc., 354 F.3d 277, 284 (4th Cir. 2004).  If such evidence is not available to the plaintiff, he may rely on the burden-shifting scheme as articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and its progeny.  This scheme requires the plaintiff to establish a prima facie case of discriminatory action, which gives rise to a presumption of discrimination.  Id. at 802.  Establishment of this presumption shifts the burden to the defendant to produce a legitimate, non-discriminatory reason for its action.  Id. at 802-03.  It is a burden of production, as opposed to a burden of proof, that the defendant has.  If he meets

this burden of production, the presumption of discrimination vanishes, and the plaintiff must show that the employer's proffered explanation is simply a pretext for intentional discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

"An employer is entitled to summary judgment if the plaintiff fails to establish a prima facie case of discrimination" or fails to show that the employer's proffered legitimate non-discriminatory reason is unworthy of belief. Henson v. Ligget Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995); see also Reeves, 530 U.S. at 143. If "no rational fact-finder could conclude that the action was discriminatory," the plaintiff cannot withstand the defendant's motion for summary judgment. Reeves, 530 U.S. at 148. Here, the plaintiff has not presented any direct or indirect evidence of a discriminatory animus on the part of the employer, and therefore must rely on setting out a prima facie case.

To establish a prima facie case of disparate treatment based on race, color, sex, or age, the plaintiff must show that (1) he is a member of a protected class; (2) he was subject to an adverse employment action; and (3) he was treated differently than similarly situated employees outside of his protected class. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Although plaintiff, as a black man, is a member of a protected class as defined by Title VII, he is unable to demonstrate that any of the actions about which he complains constitute an "adverse employment action." An adverse employment action, in the context of discriminatory treatment, stems from an employer's conduct that materially alters the terms, conditions, or benefits of employment. Burlington Northern & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2411-12 (2006). An inquiry into the adverse nature of an employer's action ordinarily focuses on whether the employee has suffered termination, demotion, decrease in pay or benefits, loss of job

title or supervisory responsibility, or decreased opportunities for promotion.  Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999).  "[D]ecisions having no immediate effect upon employment conditions . . . were not intended to fall within the direct proscription of [Title VII]."  Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (en banc).

      The plaintiff's allegations of discrimination, coupled with his deposition testimony, demonstrate that he has the belief that his confrontations with his subordinates and the disciplinary treatment he received from his supervisors were racially motivated.  Yet the plaintiff's mere perception of racial bias, however honestly held, is insufficient in the absence of additional evidence to meet the requirement of McDonnell Douglas as to discriminatory action. White v. BFI Waste Services, LLC, 375 F.3d 288, 296 (4th Cir. 2004).

      The plaintiff has alleged that the counseling he received from Gregory and White for spreading rumors constitutes adverse action, yet this did not result in a change in the plaintiff's employment condition.  Likewise, the plaintiff cannot demonstrate that the letter he received from Therrien constituted adverse employment action, for the simple fact that no change in the plaintiff's employment condition resulted.  Finally, there is no evidence apart from the plaintiff's own perception, that the individuals whom he disciplined were upset with the discipline on account of racial bias.

      Moreover, even if the alleged incidents amounted to adverse employment actions, the plaintiff cannot demonstrate that he was treated differently than other employees outside of his protected class.  In fact, the evidence on record indicates that because the plaintiff engaged in the established method for disciplining subordinate employees who violated the security department's policies, the subordinates were in fact disciplined.  The counseling forms that the

plaintiff drafted were placed in the personnel files of the offending employees, and in one case, the defendant acted on the plaintiff's discipline by demoting one of the subordinates, Carlton. The facts belie the plaintiff's allegations that the officers he disciplined felt no repercussions. To the extent that the plaintiff alleges racial discrimination on the part of Gregory for taking exception to the plaintiff's treatment of white subordinates, the evidence demonstrates to the contrary. Gregory evaluated Zilar's behavior at the time that the plaintiff had disciplined Zilar, and Gregory's appraisal was undoubtedly harsher than that of the plaintiff. The plaintiff therefore cannot show any genuine issues of material fact with regard to his allegation of racial discrimination upon which a reasonable fact-finder could base a ruling in his favor.

B. Retaliation

To establish a prima facie case of retaliation, the plaintiff must show that (1) he engaged in a protected activity; (2) the employer took adverse action against him; and (3) a causal connection existed between the protected activity and the adverse action. See Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994). "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse." Burlington Northern, 126 S. Ct. at 2415 (emphasis added). A material adversity is one that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006). The defendant may then rebut the plaintiff's prima facie case by demonstrating non-retaliatory reasons for its actions, which will shift the burden back to the plaintiff to show that the proffered reasons are pretextual. Carter, 33 F.3d at 460.

The plaintiff contends that after he made a complaint to the defendant's Human

Resources Director, Barbara Fried, he was subject to two specific instances of retaliatory behavior on the part of his supervisors. Specifically, the plaintiff alleges that his black supervisor, White, unlocked doors in a building that the plaintiff had recently secured. The plaintiff further alleges that his scheduled days off were changed during May and June of 2004. While acknowledging that his days off changed at the end of June, 2004 because of the his own request for a shift change, the plaintiff represents that the change in days off from the weekend to two days mid-week actually occurred before he made the shift change and that such a change constitutes retaliation.

Although the plaintiff did engage in protected activity by making a formal complaint to Fried and meeting with her and Dean David Buckingham about his complaints, he cannot demonstrate that the defendant's alleged retaliatory actions constitute materially adverse employment action. As to the first allegation, that White unlocked doors after the plaintiff had just locked them, the plaintiff has acknowledged that it was not based on race, as both men are black. Additionally, the plaintiff felt no repercussions other than his perception that he was being harassed. Under the standard outlined in Burlington Northern, this behavior is not actionable because it did not "produce[] an injury or harm" to the plaintiff. Burlington Northern, 126 S. Ct. at 2414.

As to the plaintiff's contention that his schedule was changed without his consent in May and June of 2004, the plaintiff has attached documentary evidence to his response to the defendant's motion for summary judgment. The defendant argues that the evidence, labeled plaintiff's Exhibit 7, was not provided by the plaintiff during the discovery period. The documents, which purport to be the security department schedule for the weeks of June 27 and

11

July 4, 2004, allegedly indicate that the plaintiff's days off had been changed from the weekend to mid-week. Federal Rule of Civil Procedure 37(c)(1) bars a party from relying on documentary evidence that was not produced at discovery, absent substantial justification. Yet, even were this court to permit the evidence, the result would not change.

Indeed, Exhibit 7 supports the defendant's assertion that the change in the plaintiff's days off coincided with his change in shifts, a change that was specifically requested by the plaintiff for health reasons. Because the work schedules for the previous weeks and the plaintiff's own time cards attest to the fact that he was still taking Saturdays and Sundays off up until the week of June 27, 2004, there is no evidence, apart from the plaintiff's allegations, that his schedule was change at any point other than in response to his specific request to be assigned to a different shift. The plaintiff has attached an affidavit to his response to the defendant's motion for summary judgment, in which he asserts that the change in days off occurred on June 15, 2004. Yet the plaintiff acknowledged in deposition testimony that his time cards would accurately reflect his days off for the time period in question, and the time cards correspond with the department schedules in confirming that the plaintiff's days off were changed to coincide with his shift change. The plaintiff cannot create a genuine issue of material fact simply by submitting an affidavit which contradicts his prior testimony. Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984). The plaintiff's reassignment to a different shift coincided with a change in rank that he had also requested, and because he was a lower rank, higher-ranking officers on the plaintiff's new shift were entitled to have the weekends off, while his off days were changed to mid-week. There simply does not exist a dispute over material facts as to this allegation.

Further, even were the court to consider this action "materially adverse" to the plaintiff,

12

the plaintiff cannot demonstrate a causal connection between it and his complaint to Fried and Buckingham. The evidence points almost entirely to the conclusion that the plaintiff's days off were changed in conjunction with his assignment to a new shift. There is no evidence that the change was an act of retaliation against the plaintiff for making complaints. Therefore the claim cannot survive the defendant's summary judgment motion.

In the plaintiff's response to the defendant's motion for summary judgment, he notes two additional allegations of retaliation on the part of the defendant: that he was assigned to "foot patrol" duties and that he was reassigned to a shift in which he would report directly to Carlton, a white security officer whom the plaintiff had disciplined earlier. The plaintiff, however, is barred from raising these new allegations because he has not first exhausted the administrative remedy provided by the Equal Employment Opportunity Commission. Under Title VII, a plaintiff must first file a charge with the EEOC within 300 days of the alleged discriminatory employment action, and the charge must have been processed and disposed of by the EEOC before the plaintiff may make a claim in federal court. Nat'l RR Passenger Corp. v. Morgan, 536 U.S. 101, 114-15 (2002); Sloop v. Memorial Mission Hosp., 198 F.3d 147, 148 (4th Cir. 1999). See also 42 U.S.C. § 2000e-5(b) Although the plaintiff filed a complaint with the EEOC on July 8, 2004, he failed to allege either that he was assigned to foot patrol or that he was reassigned to report to an officer he believed was racially biased towards him. The plaintiff has not filed a subsequent complaint with the EEOC making these allegations, and because the alleged discriminatory treatment occurred more than 300 days ago, he is barred by statute from raising these claims before the EEOC. 42 U.S.C. § 2000e-5(b).

Even were the plaintiff's additional claims not barred by his failure to exhaust the

administrative remedies available to him, they would still be legally insufficient to survive a motion for summary judgment. With respect to assignment to foot patrol, the security department schedules indicate that almost all the officers rotate through different patrols, including foot patrol. Indeed, the plaintiff cannot demonstrate that an assignment to work that he would already have to do constitutes a materially adverse action. Further, he has produced no evidence, and cannot prove, that such assignment was done in retaliation to the plaintiff's complaints to the college administration. Likewise, with respect to the plaintiff's move to a different shift in January, 2005, under the supervision of a former subordinate, the plaintiff cannot demonstrate that a reassignment to a different shift constitutes the type of materially adverse employment action for which Title VII provides a remedy. Even further, the plaintiff has provided no evidence that such reassignment was done in retaliation to his complaint. These allegations, therefore, cannot survive the defendant's motion for summary judgment.

## V. Conclusion

The parties' exchange of memoranda regarding the defendant's motion for summary judgment has demonstrated to the court that there exist no genuine issues of material fact in this case, and that the defendant, Virginia Wesleyan College, is entitled to judgment as a matter of law.

For the reasons stated on the record, and for those discussed above, the court **GRANTS** the defendant's motion for summary judgment with respect to the plaintiff's entire claims, and the matter is dismissed.

The Clerk is **REQUESTED** to send a copy of this Order to counsel of record for all

parties.

It is so **ORDERED**.

/s/
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

September 12, 2006
Norfolk, Virginia